**UNITED STATES of America, ex rel. Marcia STEPHENS, et al., Plaintiffs,**

v.

**R.D. PRABHU, M.D., et al., Defendants.**

**No. CV–S–92–653–LDG (LRL).**

United States District Court, D. Nevada.

Aug. 16, 1995.

---

Samuel B. Benham, Las Vegas, NV, for defendant.

## ORDER

Leavitt, United States Magistrate Judge.

This action is before the Court on defendants' Motion to Compel Discovery (# 112, filed March 29, 1995). The Court has considered the motion, the government's opposition (# 119, filed April 17, 1995), defendants' reply (# 129, filed April 27, 1995), as well as defendants' supplemental memorandum (# 144, filed June 2, 1995), and the government's supplemental memorandum (# 152, filed July 14, 1995). Based thereon, the following order will be entered.

## INTRODUCTION

The present discovery dispute arises from two requests for documents made by defendants in this False Claims Act ("FCA") action. Defendants first seek certain EOMB ("Explanation of Medicare Benefits") forms that were administered by Medicare through Aetna Life Insurance Company ("Carrier"), for all providers, and which contain payments or payment denials for CPT ("Physicians' Current Procedural Terminology" guide) procedure codes 94010 and 94060 where both codes were billed to the same patient on the same day.[1] In its supplemental memorandum, defendants also seek EOMBs regarding CPT code 94200.[2]

Alice Valder Curran, Civil Division, U.S. Department of Justice, Washington, DC, for the U.S.

In defense to the government's double-billing allegations, "Defendant Prabhu asserts that there was no clear policy on this

1. The government refused to produce any documents in response to this request based upon the following objection:

   The United States objects to this request as being unduly broad, unduly burdensome, oppressive, not reasonably related to lead to the discovery of admissible evidence, and designed to harass the plaintiff.

   See # 112 at 6.

2. Defendants' additional request responds to the United States' Fourth Amended Complaint. In that complaint, the government alleges that Dr. Prabhu violated the False Claims Act ("FCA") by double billing for certain medical procedures.

From 1988 to 1992, R.D. Prabhu and Prabu–Shete submitted claims to Medicare and Medicaid in which R.D. Prabhu and Prabhu–Shete claimed payment *under the 94200 code in addition to* the 94010 code and/or 94060 code. By seeking reimbursement under the *94200 code in addition to* the 94010 code and/or 94060 code, R.D. Prabhu and Prabhu–Shete obtained double payment for the maximal voluntary ventilation test.

Fourth Amended Complaint, # 140, ¶ 34 (emphasis added).

bundling[3] issue [of CPT codes 94010, 94060, and 94200] until January 1, 1995...." Defendants' Motion, # 112, at 4. By his first document request, Dr. Prabhu hopes to show "that, in addition to Defendant Prabhu, a number of other providers also billed these [three] codes separately and that the Medicare Carrier routinely reviewed and paid these claims." *Id.* at 5.

The second discovery dispute "involves claims submitted to the Medicare Carrier by Defendant Nevada Oxygen and Health Services, Inc. ("Nevada Oxygen")." *Id.* at 6. Defendants request that the government produce "[f]or 1993, all EOMB's administered by the Carrier for all durable medical equipment companies which contain payment denials due to services or equipment being billed after the patient's death." The government contends that this billing violated the FCA. By contrast, defendants argue that their document request "is necessary in order to show that this is nothing more than an inadvertent billing error which is not uncommon among providers of durable medical equipment." *Id.*

For the reasons explained below, defendants' motion will be denied.

## DISCUSSION

### A. EOMBs Regarding CPT Codes 94010, 94060, and 94200

■ Under FED.R.CIV.P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." This rule has been broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947)).

In its supplemental memorandum, defendants argue that the requested EOMB forms regarding CPT codes 94010, 94060, and 94200 are relevant to the elements of the FCA cause of action. The documents purportedly will show that:

(1) the claims at issue do not contain "false" information, but instead merely contain information that is subject to various reasonable interpretations within the medical community; and

(2) the claims at issue could not have been "knowingly" submitted as false because there was no consensus among either the Medicare carrier or medical community that these codes could not be submitted together.

# 144 at 5.[4]

The government questions the relevance of defendants' first document request.

[T]he information contained in the documents requested—other providers' submission of identical claims and Aetna's payment or disallowance of payment on those claims—can in no way impact on the legal question of whether the claims at issue are inflated, or the factual question of whether Defendants knew their claims under these codes were inflated when they submitted them.

Government's Supplemental Memorandum, # 152, at 3.

As the government notes in regard to the element of falsity, the documentation of other

3. " 'Unbundling' is a term commonly used within the medical community. It is generally understood to mean a situation in which a provider charges separately for each component part of a service as opposed to charging one price for the entire service." Defendants' Motion, # 112, at 3.

4. The FCA provides in relevant part:
   **(a) Liability for certain acts.**—Any person who—

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

is liable to the United States Government for a civil penalty....
31 U.S.C. § 3729(a).

providers who unbundled CPT codes 94010, 94060, and 94200 during the relevant time period "will not change the nature of Defendants' [allegedly] similarly wrongful actions." The EOMB forms do not shed light on other "reasonable interpretations" of these CPT codes. The forms simply list the date, the relevant code, the amount billed, and the amount paid by Medicare in response. *See, e.g.,* Exhibit 5, attached to # 152. "As Exhibit 5 shows, an EOMB provides no insight into the biller's reasoning." # 152 at 7.

Additionally, the requested EOMBs cannot prove or disprove that at the time defendants submitted the claims at issue they did so "knowingly." The relevant inquiry is whether defendants knew that the claims submitted were false or fraudulent *at the time they were submitted.* On this point, a footnote from the government's supplement should be quoted in its entirety:

> The actions of third party providers could be relevant only if Defendants could prove that *at the time in question*—1988–1992—they knew that the other providers were submitting similar claims and were influenced by their actions. Here, however, Defendants have admitted that they were not influenced by the billing practices of other providers during the 1988 through 1992 time period, because Defendants are seeking the EOMB's to determine what, in fact, were the billing practices of those providers at that time. *See* Def.Mem. at 5:5–9 ("These records, *in all likelihood,* will show that, in addition to Defendant Prabhu, a number of other providers also billed these [three] codes separately..... "). Defendants are seeking the records to create a knowledge defense that is three years too late.

# 152 at 10 n. 9 (emphasis in original).

Defendants' first document request can only be considered a fishing expedition, "not reasonably calculated to lead to the discovery of admissible evidence." Hence, the motion

to compel production in this regard will be denied.[5]

## B. EOMBs Regarding Medical Supplies Billed After a Patient's Death

■ By this second request, Defendant Nevada Oxygen seeks production of all EOMBs issued by the Carrier in 1993 for all durable medical equipment companies that indicate that payment for medical services was denied due to the patient's death. Defendants argue that these records will show "that this is nothing more than an inadvertent billing error which is not uncommon among providers of durable medical equipment."

For relevance reasons, similar to the discussion above, this document request will also be denied. "[T]he improper conduct of durable medical equipment suppliers unknown to Nevada Oxygen cannot justify defendant's conduct." Government's opposition, # 119, at 8. In other words, theoretical EOMBs which might reveal that other medical equipment suppliers submitted similar claims for payment after a patient's death and were denied, do not make it more or less likely that Nevada Oxygen's submissions were due to a simple billing error. *See* FED.R.EVID. 401.[6]

IT IS THEREFORE ORDERED that defendants' motion (# 112) is denied.

---

5. Because the Court bases its decision on relevance grounds, it's not necessary to consider the government's additional arguments, namely, that defendants' request is "unduly burdensome, oppressive, and designed to harass."

6. Again, it is unnecessary to consider the government's additional arguments concerning the burdensomeness, oppressiveness or harassment associated with the second document request.